UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:  Lance Bieker                                          Case No.: 8:19-bk-00023-MGW
        Debtor.                                              Chapter 13

_____/

## DEBTOR'S MOTION TO SELL PROPERTY

Debtor, Lance Bieker, by and through the undersigned attorney, moves for permission to sell the properties located at 4135 & 5139 Manatee Avenue West and 5239 Manatee Avenue West in Bradenton, Florida, and further states as follows:

1.      This is an unconfirmed chapter 13 case.

2.      Debtor has entered into two contracts, contingent upon this Court's approval, to sell the properties located at 4135 & 5139 Manatee Avenue West (together) and 5239 Manatee Avenue West. Copies of those contracts are attached hereto as Exhibits 'A' and 'B', respectively.

3.      The closing for 4135 & 5139 Manatee Ave is scheduled for July 12, 2019. After the secured claim(s) on that property are paid, Debtor expects to net approximately $15-19k.

4.      The closing for 5239 Manatee Ave is scheduled for July 22, 2019. After the secured claim(s) are paid on that property, Debtor expects to net approximately $245k.

5.      If the sales are approved, Debtor requests to retain $10k from the first closing and $85k from the second closing. As to the remainder of the net proceeds ($165-169k), Debtor wishes to dedicate those funds to plan. It is expected that those funds are approximately in the amount of what will be the remaining unsatisfied claims in this case.

**WHEREFORE,** Debtor requests permission to sell the properties as stated above and to retain a portion of the funds and remit the remainder to the trustee as described above.

**DATED** this 26th day of June, 2019.

/s/ Christopher Mat Hittel
Christopher Mat Hittel, Esquire
Fla. Bar No. 0696048
HITTEL LAW, P.A.
333 6th Avenue West
Bradenton, FL 34205
Phone: (941)746-7777
Fax: (941) 746-1133
service@hittellaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the following parties via US Mail or ECF electronic notification, as indicated, on this 26th day of June, 2019:

Lance Bieker
2408 49th Avenue W
Bradenton, FL 34207
(Via US Mail)

United States Trustee
(Via ECF Notification)

Kelly Remick
Chapter 13 Standing Trustee
(Via ECF Notification)

All Creditors on the attached mailing matrix.
(Via US Mail)

/s/ Christopher Mat Hittel
Christopher Mat Hittel, Esquire

Label Matrix for local noticing
113A-8
Case 8:19-bk-00023-MGW
Middle District of Florida
Tampa
Wed Jun 26 17:16:35 EDT 2019

Lance A Bieker
2408 49th Avenue W
Bradenton, FL 34207-1859

First Bank
First Bank
c/o Robert C. Schermer, Esq.
P. O. Box 551
Bradenton, FL 34206-0551

Manatee County Tax Collector
1001 3rd Ave W, Suite 240
Bradenton, FL 34205-7871

Laurie Parker
715 Poinsettia Ave
Ellenton, FL 34222-2424

William D Parker Jr.
715 Poinsettia Ave
Ellenton, FL 34222-2424

Parker Family Trust, dated November 8, 1995
715 Poinsettia Ave
Ellenton, FL 34222-2424

U.S. Bank National Association
SHD Legal Group P.A.
POB 19519
Ft Lauderdale, FL 33318-0519

Barclays Bank Delaware
Attn: Correspondence
Po Box 8801
Wilmington, DE 19899-8801

Blake Hospital
2020
59th St. W
Bradenton, FL 34209-4669

CLUSIA, LLC
SUITE 425
200 S PARK ROAD, SUITE 425
HOLLYWOOD, FL 33021-8362

(p)CENTENNIAL BANK ATTN SPECIAL ASSETS
P O BOX 1028
CABOT AR 72023-1028

Centennial Bank, successor by merger
to Stonegate Bank
c/o Thompson Commercial Law Group
412 E. Madison Street, Suite 900
Tampa, FL 33602-4617

Citibank/The Home Depot
Attn: Recovery/Centralized Bankruptcy
Po Box 790034
St Louis, MO 63179-0034

Clusia, LLC
200 South Park Road
Suite 425
Hollywood, FL 33021-8362

Department of Revenue
PO Box 6668
Tallahassee, FL 32314-6668

EMERALD TAX, LLC
200 S Park Road, Suite 425
Hollywood, FL 33021-8362

EMERALD TAX, LLC
SUITE 425
200 S PARK ROAD, SUITE 425
HOLLYWOOD, FL 33021-8362

Emerald Tax, LLC
200 South Park Road
Suite 425
Hollywood, FL 33021-8362

Evermore Funding LLC - 18
PO Box 645040
Cincinnati OH 45264-5040

Fairway Center Condo. Assoc.
9031 Town Center Parkway
Bradenton, FL 34202-4150

Fairway Center Partnership
PO Box 1357
Bradenton, FL 34206-1357

First Bank
11901 Olive Blvd
Creve Coeur, MO  63141-6736

Gerald L. Jones
1712 54th St. Ct W
Bradenton, FL 34209-5044

Gerald L. Jones
1712 54th Street Court West
Bradenton, FL 34209-5044

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Laurie Parker
c/o Timothy Weber
Weber Crabb Wein
5453 Central Avenue
Saint Petersburg, FL 33710-8049

Manatee County Tax Collector
1001 3rd Avenue West
Suite 240
Bradenton, FL 34205-7871

Manatee County Tax Collector
P.O. Box 25300
Bradenton, FL 34206-5300

Med Business Bureau
1460 Renaissance Dr #400
Park Ridge, IL 60068-1349

Parker Family Trust
c/o Timothy Weber
Weber Crabb Wein
5453 Central Avenue
Saint Petersburg, FL 33710-8049

(p)PORTFOLIO RECOVERY ASSOCIATES LLC
PO BOX 41067
NORFOLK VA 23541-1067

Rushmore Loan Management
PO Box 52708
Irvine, CA 92619-2708

U.S. BANK NATIONAL ASSOCIATION
Rushmore Loan Management Services LLC
P.O. Box 55004
Irvine CA 92619-5004

William Parker
c/o Timothy Weber
Weber Crabb Wein
5453 Central Avenue
Saint Petersburg, FL 33710-8049

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Centennial Bank
PO Box 966
Conway, AR 72033

Portfolio Recovery Associates, LLC
POB 41067
Norfolk VA 23541

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Fairway Center Condominium Association, In

(d)Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

(u)Centennial Bank +

End of Label Matrix
Mailable recipients    34
Bypassed recipients     3
Total                  37

**Commercial Contract**

EXHIBIT
'A'

 FloridaRealtors

1. **1. PARTIES AND PROPERTY:** SUNSHINE RX. L.L.C. and or ASSIGNS ("Buyer")
2. agrees to buy and LANCE A. BIEKER ("Seller")
3. agrees to sell the property at:
4. Street Address: 5135 & 5139 MANATEE AVENUE WEST, BRADENTON, FL. 34209
5.
6. Legal Description: UNIT 9A & UNIT 96 FAIRWAY CENTER CONDOMINIUM
7.
8. and the following Personal Property: NONE
9.
10. (all collectively referred to as the "Property") on the terms and conditions set forth below.
11. **2. PURCHASE PRICE:** $ 184,000.00
12. **(a)** Deposit held in escrow by: T.B.D.B $ 0.00
13. ("Escrow Agent") (checks are subject to actual and final collection)
14. Escrow Agent's address: _____ Phone: _____
15. **(b)** Additional deposit to be made to Escrow Agent
16. ☐within ____ days (3 days, if left blank) after completion of Due Diligence Period or
17. ☒within 10 days after Effective Date $ 9,200.00
18. **(c)** Additional deposit to be made to Escrow Agent
19. ☐within ____ days (3 days, if left blank) after completion of Due Diligence Period or
20. ☐within ____ days after Effective Date $ 0.00
21. **(d)** Total financing (see Paragraph 5) $ 147,200.00
22. **(e)** Other $
23. **(f)** All deposits will be credited to the purchase price at closing.
24. Balance to close, subject to adjustments and prorations, to be paid
25. via wire transfer. $ 27,600.00
26. For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of
27. Buyer's written notice of acceptability.
28. **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**
29. and **Buyer** and an executed copy delivered to all parties on or before JUNE 5TH, 2019 , this offer
30. will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be
31. 3 days from the date the counter offer is delivered. The **"Effective Date"** of this Contract is the date on which the
32. last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer or
33. N/A . Calendar days will be used when computing time periods, except time periods of 5
34. days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal
35. holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next
36. business day. **Time is of the essence in this Contract.**
37. **4. CLOSING DATE AND LOCATION:**
38. **(a) Closing Date:** This transaction will be closed on OR BEFORE JUNE 28TH, 2019 (Closing Date), unless
39. specifically extended by other provisions of this Contract. The Closing Date will prevail over all other time periods
40. including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-5   Rev. 9/17                                                    ©2017 Florida Realtors®

41 on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
42 the insurance underwriting suspension is lifted.

43 **(b) Location:** Closing will take place in MANATEE County, Florida. (If left blank, closing will take place in the
44 county where the property is located.) Closing may be conducted by mail or electronic means.

45 **5. THIRD PARTY FINANCING:**
46 **BUYER'S OBLIGATION:** On or before _____ days (5 days if left blank) after Effective Date, **Buyer** will apply for third
47 party financing in an amount not to exceed 80 % of the purchase price or $ N/A , with a fixed
48 interest rate not to exceed 6 % per year with an initial variable interest rate not to exceed 6 %, with points or
49 commitment or loan fees not to exceed 1.5 % of the principal amount, for a term of 5 years, and amortized
50 over 20 years, with additional terms as follows:
51 _____
52 **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
53 lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within 30 days (45 days if left
54 blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close
55 the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the mortgage
56 broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately upon
57 obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable
58 diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within _____ days (3 days if left blank)
59 deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
60 If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.
61 Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of
62 those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**
63 has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and
64 thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or
65 before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both
66 parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving
67 the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use
68 good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction
69 does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms
70 and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-
71 approval letter not a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.

72 **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☐ statutory warranty
73 deed ☒ special warranty deed ☐ other N/A , free of liens, easements and
74 encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
75 restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
76 matters to which title will be subject) NONE
77 _____ ;
78 provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
79 Property as GENERAL COMMERCIAL ZONED CONDOMINIUM .

80 **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
81 and pay for the title search and closing services. **Seller** will, at (check one) ☐ **Seller's** ☒ **Buyer's** expense and
82 within N/A days after Effective Date or at least 3 days before Closing Date deliver to **Buyer** (check one)
83 ☒ (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
84 **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
85 price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
86 **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. ☐ (ii.) an
87 abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
88 However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed
89 insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
90 exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or

**Buyer** ( ) ( ) and **Seller** ( ) ( ) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

©2017 Florida Realtors®

91  **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such
92  an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of title.

93  **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
94  of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2)
95  **Buyer** delivers proper written notice and **Seller** cures the defects within _____ days from receipt of the notice
96  ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
97  Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98  scheduled Closing Date. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be
99  cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have 10 days
100 from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or accept
101 title subject to existing defects and close the transaction without reduction in purchase price.

102 **(c) Survey:** (check applicable provisions below)
103 (i.) ☐ **Seller** will, within _____ days from Effective Date, deliver to **Buyer** copies of prior surveys,
104 plans, specifications, and engineering documents, if any, and the following documents relevant to this
105 transaction:
106 _____ NO SURVEY NEEDED, CONDO _____,
107 prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
108 transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
109 date this Contract is terminated.
110 ☒ **Buyer** will, at ☐ **Seller's** ☐ **Buyer's** expense and within the time period allowed to deliver and examine
111 title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112 encroachments on the Property or that the improvements encroach on the lands of another, ☐ **Buyer** will
113 accept the Property with existing encroachments ☒ such encroachments will constitute a title defect to be
114 cured within the Curative Period.

115 **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

116 **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition,
117 ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller**
118 makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119 changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and receive a
120 refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121 condition existing as of the end of Due Diligence period, the cost of which is not to exceed $ 0.00 _____ (1.5% of
122 the purchase price, if left blank). By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any
123 defects in the Property. (Check **(a)** or **(b)**)

124 ☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125 condition.

126 ☒ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within 10 ___ days from Effective Date ("Due
127 Diligence Period"), determine whether the Property is suitable, in **Buyer's sole and absolute discretion.** During the
128 term of this Contract, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which
129 **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural,
130 environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131 regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132 state and regional growth management and comprehensive land use plans; availability of permits, government
133 approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134 water contamination; and other inspections that **Buyer** deems appropriate. **Buyer** will deliver written notice to
135 **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property
136 is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property in
137 its present "as is" condition. **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the
138 Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
139 notice, at a mutually agreed upon time; provided, however, that **Buyer**, its agents, contractors and assigns enter
140 the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from
141 losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142 liability to any person, arising from the conduct of any and all inspections or any work authorized by **Buyer. Buyer**
143 will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144 **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the



Buyer ( ✗ ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

©2017 Florida Realtors®

145 Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
146 Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
147 result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
148 **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

149 **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
150 parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
151 to ensure that all Property is on the premises.

152 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
153 business conducted on the Property in the manner operated prior to Contract and will take no action that would
154 adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
155 vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted ☐ only with
156 **Buyer's** consent ☒ without **Buyer's** consent.

157 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
158 the norms where the Property is located.

159 **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
160 closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
161 mailboxes, and security systems.

162 **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
163 statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
164 recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
165 prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

166 **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
167 service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
168 service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
169 contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
170 contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
171 documents, if applicable; assignments of leases, updated rent roll; tenant and lender estoppels letters (if
172 applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
173 **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
174 change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
175 **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
176 deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
177 appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
178 requirements of local law. **Seller** will transfer security deposits to **Buyer**. **Buyer** will provide the closing statement,
179 mortgages and notes, security agreements, and financing statements.

180 **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
181 payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
182 premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
183 amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
184 allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
185 of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

186 **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
187 will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
188 pay all installments due and payable on or before the Closing Date, with any installment for any period extending
189 beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
190 Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
191 Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
192 completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
193 estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
194 does not apply to condominium association special assessments.

195 **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
196 **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
197 complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

©2017 Florida Realtors®

198  with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or
199  Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
200  withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
201  requirement.

202  **10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive,
203  deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the
204  terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to
205  **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent
206  has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed
207  items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator
208  determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over
209  the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all
210  liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate
211  broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items
212  or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs
213  incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs
214  in favor of the prevailing party.

215  **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
216  default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
217  complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after
218  delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

219  **12. FORCE MAJEURE: Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable
220  to each other for damages so long as performance or non-performance of the obligation, or the availability of services,
221  insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure.
222  "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual
223  transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the
224  non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will
225  be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this
226  Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than
227  30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
228  and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

229  **13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
230  not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
231  will be returned in accordance with applicable Florida Laws and regulations.

232  **14. DEFAULT:**
233  **(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
234  the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby
235  waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek
236  specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the
237  brokerage fee.
238  **(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1)
239  retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
240  execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
241  specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1)
242  terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without
243  waiving any remedy for **Buyer's** default.

244  **15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
245  prevailing party, which for purposes of this provision will include **Buyer, Seller** and Broker, will be awarded reasonable
246  attorneys' fees, costs, and expenses.

247  **16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
248  electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
249  document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
250  representing a party will be as effective as if given by or delivered to that party.

**Buyer** ( ) ( ) and **Seller** ( ) ( ) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

©2017 Florida Realtors®

**17. DISCLOSURES:**

**(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

**(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, shall be paid as set forth in Paragraph 9(e).

**(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**(d) Energy-Efficiency Rating Information: Buyer** acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

**18. RISK OF LOSS:**

**(a)** If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any, and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

**(b)** If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer," "Seller"** and "Broker" may be singular or plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

**(a) Seller's Broker:** _____ DARLING REALTY _____ ,
                                              (Company Name)                    (Licensee)

_____ 2044 7TH STREET, SARASOTA, FL. 34234 _____
                                    (Address, Telephone, Fax, E-mail)

who ☒ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated_ by ☒ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☒ a listing agreement ☐ other (specify) 6% OF TOTAL P.P.

**(b) Buyer's Broker:** _____ N/A _____ ,
                                           (Company Name)                    (Licensee)

_____
                                    (Address, Telephone, Fax, E-mail)

Buyer ( ____ ) and Seller ( ____ ) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-5   Rev. 9/17                                                              ©2017 Florida Realtors®

302 who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
303 ☐ **Seller's Broker** ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ an MLS offer of compensation ☐ other (specify)
304 _____
305 (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
306 inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
307 indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
308 reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
309 inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
310 Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
311 services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
312 expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

313 **22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
314 this Contract):
315 ☐ Arbitration                    ☐ Seller Warranty                      ☐ Existing Mortgage
316 ☐ Section 1031 Exchange          ☐ Coastal Construction Control Line    ☐ Buyer's Attorney Approval
317 ☐ Property Inspection and Repair ☐ Flood Area Hazard Zone               ☐ Seller's Attorney Approval
318 ☐ Seller Representations         ☐ Seller Financing                     ☐ Other _____

319 **23. ADDITIONAL TERMS:**
320       <u>THIS CONTRACT IS CONTINGENT ON US BANKRUPTCY COURT</u>
321 <u>APPROVAL.</u>
322 _____
323 _____
324 _____
325 _____
326 _____
327 _____
328 _____
329 _____
330 _____
331 _____
332 _____
333 _____
334 _____
335 _____
336 _____
337 _____
338 _____
339 _____
340 _____
341 _____

342 **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
343 **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
344 **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
345 **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
346 **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
347 **REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

348    **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
349    **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
350    **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
351    **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
352    **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
353    **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

354    Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355    party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356    terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357    to do so.

358    _____    Date: _____ 05/31/2019 _____
      (Signature of Buyer

359    VIKRAM B RAO FOR SUNSHINE RX LLC    Tax ID No.: 36-4722976
      (Typed or Printed Name of Buyer)

360    Title: PRESIDENT    Telephone: 9415387122

361    _____    Date: _____
      (Signature of Buyer

362    _____    Tax ID No.: _____
      (Typed or Printed Name of Buyer)

363    Title: _____    Telephone: _____

364    Buyer's Address for purpose of notice _____

365    Facsimile: _____    Email: _____

366    _____    Date: _____ 5/31/19 _____
      (Signature of Seller)

367    Lance A. Bieber    Tax ID No.: _____
      (Typed or Printed Name of Seller)

368    Title: Owner    Telephone: _____

369    _____    Date: _____
      (Signature of Seller)

370    _____    Tax ID No.: _____
      (Typed or Printed Name of Seller)

371    Title: _____    Telephone: _____

372    Seller's Address for purpose of notice: _____

373    Facsimile: _____    Email: _____

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or

Buyer ( ✓ ) ( ) and Seller ( X ) ( ) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5    Rev. 9/17                                            ©2017 Florida Realtors®

Authentisign ID: A6F05B765C504-43E-42D5-C1349C97EBE2A

## Commercial Contract

EXHIBIT 'B'

🏠 FloridaRealtors®

1  **1. PARTIES AND PROPERTY:** Pinki Jandu and/or assigns                                   ("Buyer")

2  agrees to buy and _____ Lance A Bieker _____ & _____ Stacy V. George _____ ("Seller")

3  agrees to sell the property at:

4  Street Address: 5239   Manatee Ave W

5  Bradenton                                                                 FL  34209-3742

6  Legal Description: UNIT 2 FAIRWAY CENTER CONDO PI#38013.0015/7

7  _____

8  and the following Personal Property: _____

9  _____

10  (all collectively referred to as the "Property") on the terms and conditions set forth below.

11  **2. PURCHASE PRICE:**                                                    $          465,000.00

12  **(a)** Deposit held in escrow by: Dye, Harrison, Kirkland, Petruff, Pratt & St Paul LLC  $ _____

13       ("Escrow Agent") (checks are subject to actual and final collection)

14  Escrow Agent's address: _____ 1206 Manatee Ave W _____ Phone: 941-748-4411

15  **(b)** Additional deposit to be made to Escrow Agent

16  ☐ within _____ days (3 days, if left blank) after completion of Due Diligence Period or

17  ☑ within 10 days after Effective Date                                     $            7,500.00

18  **(c)** Additional deposit to be made to Escrow Agent

19  ☐ within _____ days (3 days, if left blank) after completion of Due Diligence Period or

20  ☐ within _____ days after Effective Date                                  $ _____

21  **(d)** Total financing (see Paragraph 5) _____                          $          388,800.00

22  **(e)** Other _____                                                       $ _____

23  **(f)** All deposits will be credited to the purchase price at closing.

24  Balance to close, subject to adjustments and prorations, to be paid

25  via wire transfer.                                                        $           68,700.00

26  For the purposes of this paragraph, "completion" means the end of the Due Diligence Period or upon delivery of

27  Buyer's written notice of acceptability.

28  **3. TIME FOR ACCEPTANCE; EFFECTIVE DATE; COMPUTATION OF TIME:** Unless this offer is signed by **Seller**

29  and **Buyer** and an executed copy delivered to all parties on or before _____ 6/7/2019 _____, this offer

30  will be withdrawn and the **Buyer's** deposit, if any, will be returned. The time for acceptance of any counter offer will be

31  3 days from the date the counter offer is delivered. **The "Effective Date" of this Contract is the date on which the**

32  **last one of the Seller and Buyer has signed or initialed and delivered this offer or the final counter offer or**

33  _____. Calendar days will be used when computing time periods, except time periods of 5

34  days or less. Time periods of 5 days or less will be computed without including Saturday, Sunday, or national legal

35  holidays. Any time period ending on a Saturday, Sunday, or national legal holiday will extend until 5:00 p.m. of the next

36  business day. **Time is of the essence in this Contract.**

37  **4. CLOSING DATE AND LOCATION:**

38  **(a) Closing Date:** This transaction will be closed on _____ 7/22/2019 _____ (Closing Date), unless

39  specifically extended under other provisions of this Contract. The Closing Date will prevail over all other time periods

40  including, but not limited to, Financing and Due Diligence periods. In the event insurance underwriting is suspended

Buyer ( PJ ) (_____) and Seller ( ZanB ) ( SVG ) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.

CC-5   Rev. 9/17                                                            ©2017 Florida Realtors®

Authentisign ID: 1CF55675-C5B4-4A33-8210-CB86B98AE1DB

41 on Closing Date and **Buyer** is unable to obtain property insurance, **Buyer** may postpone closing up to 5 days after
42 the insurance underwriting suspension is lifted.

43 **(b) Location:** Closing will take place in ____Manatee____ County, Florida. (If left blank, closing will take place in the
44 county where the property is located.) Closing may be conducted by mail or electronic means.

45 **5. THIRD PARTY FINANCING:**
46 **BUYER'S OBLIGATION:** On or before _____ days (5 days if left blank) after Effective Date, **Buyer** will apply for third
47 party financing in an amount not to exceed ___90___% of the purchase price or $___388,800.00___, with a fixed
48 interest rate not to exceed __6__% per year with an initial variable interest rate not to exceed _____%, with points or
49 commitment or loan fees not to exceed __2__% of the principal amount, for a term of __10__ years, and amortized
50 over __20__ years, with additional terms as follows:
51 _____.
52 **Buyer** will timely provide any and all credit, employment, financial and other information reasonably required by any
53 lender. **Buyer** will use good faith and reasonable diligence to (i) obtain Loan Approval within ____ days (45 days if left
54 blank) from Effective Date (Loan Approval Date), (ii) satisfy terms and conditions of the Loan Approval, and (iii) close
55 the loan. **Buyer** will keep **Seller** and Broker fully informed about loan application status and authorizes the mortgage
56 broker and lender to disclose all such information to **Seller** and Broker. **Buyer** will notify **Seller** immediately upon
57 obtaining financing or being rejected by a lender. **CANCELLATION:** If **Buyer**, after using good faith and reasonable
58 diligence, fails to obtain Loan Approval by Loan Approval Date, **Buyer** may within ____ days (3 days if left blank)
59 deliver written notice to **Seller** stating **Buyer** either waives this financing contingency or cancels this Contract.
60 If **Buyer** does neither, then **Seller** may cancel this Contract by delivering written notice to **Buyer** at any time thereafter.
61 Unless this financing contingency has been waived, this Contract shall remain subject to the satisfaction, by closing, of
62 those conditions of Loan Approval related to the Property. **DEPOSIT(S) (for purposes of Paragraph 5 only):** If **Buyer**
63 has used good faith and reasonable diligence but does not obtain Loan Approval by Loan Approval Date and
64 thereafter either party elects to cancel this Contract as set forth above or the lender fails or refuses to close on or
65 before the Closing Date without fault on **Buyer's** part, the Deposit(s) shall be returned to **Buyer**, whereupon both
66 parties will be released from all further obligations under this Contract, except for obligations stated herein as surviving
67 the termination of this Contract. If neither party elects to terminate this Contract as set forth above or **Buyer** fails to use
68 good faith or reasonable diligence as set forth above, **Seller** will be entitled to retain the Deposit(s) if the transaction
69 does not close. For purposes of this Contract, "Loan Approval" means a statement by the lender setting forth the terms
70 and conditions upon which the lender is willing to make a particular mortgage loan to a particular buyer. Neither a pre-
71 approval letter not a prequalification letter shall be deemed a Loan Approval for purposes of this Contract.

72 **6. TITLE: Seller** has the legal capacity to and will convey marketable title to the Property by ☒statutory warranty
73 deed ☐ special warranty deed ☐ other _____, free of liens, easements and
74 encumbrances of record or known to **Seller**, but subject to property taxes for the year of closing; covenants,
75 restrictions and public utility easements of record; existing zoning and governmental regulations; and (list any other
76 matters to which title will be subject)_____
77 _____;
78 provided there exists at closing no violation of the foregoing and none of them prevents **Buyer's** intended use of the
79 Property as _General commercial zoned condominium_____.

80 **(a) Evidence of Title:** The party who pays the premium for the title insurance policy will select the closing agent
81 and pay for the title search and closing services. **Seller** will, at (check one) ☐ **Seller's** ☒ **Buyer's** expense and
82 within _____ days after Effective Date or at least __15__ days before Closing Date deliver to **Buyer** (check one)
83 ☒ (i) a title insurance commitment by a Florida licensed title insurer setting forth those matters to be discharged by
84 **Seller** at or before Closing and, upon **Buyer** recording the deed, an owner's policy in the amount of the purchase
85 price for fee simple title subject only to exceptions stated above. If **Buyer** is paying for the evidence of title and
86 **Seller** has an owner's policy, **Seller** will deliver a copy to **Buyer** within 15 days after Effective Date. ☐ (ii.) an
87 abstract of title, prepared or brought current by an existing abstract firm or certified as correct by an existing firm.
88 However, if such an abstract is not available to **Seller**, then a prior owner's title policy acceptable to the proposed
89 insurer as a base for reissuance of coverage may be used. The prior policy will include copies of all policy
90 exceptions and an update in a format acceptable to **Buyer** from the policy effective date and certified to **Buyer** or

Buyer (__PJ__) (_____) and Seller (__ZarB__) (__SVG__) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.

This software is licensed to [Vincent Ricaud - INVESTUS REALTY LLC] www.transactiondesk.com.    InstanetFORMS

Authentisign ID: 1CF83A6C5B4-43E-4E76-CDA5-D8958D325

91     **Buyer's** closing agent together with copies of all documents recited in the prior policy and in the update. If such
92     an abstract or prior policy is not available to **Seller** then (i.) above will be the evidence of title.

93     **(b) Title Examination: Buyer** will, within 15 days from receipt of the evidence of title deliver written notice to **Seller**
94     of title defects. Title will be deemed acceptable to **Buyer** if (1) **Buyer** fails to deliver proper notice of defects or (2)
95     **Buyer** delivers proper written notice and **Seller** cures the defects within _____ days from receipt of the notice
96     ("Curative Period"). Seller shall use good faith efforts to cure the defects. If the defects are cured within the
97     Curative Period, closing will occur on the latter of 10 days after receipt by Buyer of notice of such curing or the
98     scheduled Closing Date. **Seller** may elect not to cure defects if **Seller** reasonably believes any defect cannot be
99     cured within the Curative Period. If the defects are not cured within the Curative Period, **Buyer** will have 10 days
100    from receipt of notice of **Seller's** inability to cure the defects to elect whether to terminate this Contract or accept
101    title subject to existing defects and close the transaction without reduction in purchase price.

102    **(c) Survey:** (check applicable provisions below)
103       (i.) ☒ **Seller** will, within __5__ days from Effective Date, deliver to **Buyer** copies of prior surveys,
104       plans, specifications, and engineering documents, if any, and the following documents relevant to this
105       transaction:
106       `leases, condo documents, annual budget` _____,
107       prepared for **Seller** or in **Seller's** possession, which show all currently existing structures. In the event this
108       transaction does not close, all documents provided by **Seller** will be returned to **Seller** within 10 days from the
109       date this Contract is terminated.
110       ☒ **Buyer** will, at ☐ **Seller's** ☒ **Buyer's** expense and within the time period allowed to deliver and examine
111       title evidence, obtain a current certified survey of the Property from a registered surveyor. If the survey reveals
112       encroachments on the Property or that the improvements encroach on the lands of another, ☐ **Buyer** will
113       accept the Property with existing encroachments ☒ such encroachments will constitute a title defect to be
114       cured within the Curative Period.

115    **(d) Ingress and Egress: Seller** warrants that the Property presently has ingress and egress.

116   **7. PROPERTY CONDITION: Seller** will deliver the Property to **Buyer** at the time agreed in its present "as is" condition,
117   ordinary wear and tear excepted, and will maintain the landscaping and grounds in a comparable condition. **Seller**
118   makes no warranties other than marketability of title. In the event that the condition of the Property has materially
119   changed since the expiration of the Due Diligence Period, **Buyer** may elect to terminate the Contract and receive a
120   refund of any and all deposits paid, plus interest, if applicable, or require Seller to return the Property to the required
121   condition existing as of the end of Due Diligence period, the cost of which is not to exceed $_____ (1.5% of
122   the purchase price, if left blank). By accepting the Property "as is", **Buyer** waives all claims against **Seller** for any
123   defects in the Property. (Check **(a)** or **(b)**)

124       ☐ **(a) As Is: Buyer** has inspected the Property or waives any right to inspect and accepts the Property in its "as is"
125       condition.

126       ☒ **(b) Due Diligence Period: Buyer** will, at **Buyer's** expense and within __30__ days from Effective Date ("Due
127       Diligence Period"), determine whether the Property is suitable, in **Buyer's** sole and absolute discretion. During the
128       term of this Contract, **Buyer** may conduct any tests, analyses, surveys and investigations ("Inspections") which
129       **Buyer** deems necessary to determine to **Buyer's** satisfaction the Property's engineering, architectural,
130       environmental properties; zoning and zoning restrictions; flood zone designation and restrictions; subdivision
131       regulations; soil and grade; availability of access to public roads, water, and other utilities; consistency with local,
132       state and regional growth management and comprehensive land use plans; availability of permits, government
133       approvals and licenses; compliance with American with Disabilities Act; absence of asbestos, soil and ground
134       water contamination; and other inspections that **Buyer** deems appropriate. **Buyer** will deliver written notice to
135       **Seller** prior to the expiration of the Due Diligence Period of **Buyer's** determination of whether or not the Property
136       is acceptable. **Buyer's** failure to comply with this notice requirement will constitute acceptance of the Property in
137       its present "as is" condition. **Seller** grants to **Buyer**, its agents, contractors and assigns, the right to enter the
138       Property at any time during the term of this Contract for the purpose of conducting Inspections, upon reasonable
139       notice, at a mutually agreed upon time; provided, however, that **Buyer**, its agents, contractors and assigns enter
140       the Property and conduct Inspections at their own risk. **Buyer** will indemnify and hold **Seller** harmless from
141       losses, damages, costs, claims and expenses of any nature, including attorneys' fees at all levels, and from
142       liability to any person, arising from the conduct of any and all Inspections or any work authorized by **Buyer**. **Buyer**
143       will not engage in any activity that could result in a mechanic's lien being filed against the Property without
144       **Seller's** prior written consent. In the event this transaction does not close, (1) **Buyer** will repair all damages to the

Buyer ( PJ ) (_____) and Seller ( LAB ) ( SVG ) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.

This software is licensed to [Vincent Ricaud - INVESTUS REALTY LLC] www.transactiondesk.com.   InstanetFORMS

145 Property resulting from the Inspections and return the Property to the condition it was in prior to conduct of the
146 Inspections, and (2) **Buyer** will, at **Buyer's** expense release to **Seller** all reports and other work generated as a
147 result of the Inspections. Should **Buyer** deliver timely notice that the Property is not acceptable, **Seller** agrees that
148 **Buyer's** deposit will be immediately returned to **Buyer** and the Contract terminated.

149 **(c) Walk-through Inspection: Buyer** may, on the day prior to closing or any other time mutually agreeable to the
150 parties, conduct a final "walk-through" inspection of the Property to determine compliance with this paragraph and
151 to ensure that all Property is on the premises.

152 **8. OPERATION OF PROPERTY DURING CONTRACT PERIOD: Seller** will continue to operate the Property and any
153 business conducted on the Property in the manner operated prior to Contract and will take no action that would
154 adversely impact the Property after closing, as to tenants, lenders or business, if any. Any changes, such as renting
155 vacant space, that materially affect the Property or **Buyer's** intended use of the Property will be permitted ☐ only with
156 **Buyer's** consent ☐ without **Buyer's** consent.

157 **9. CLOSING PROCEDURE:** Unless otherwise agreed or stated herein, closing procedure shall be in accordance with
158 the norms where the Property is located.

159 **(a) Possession and Occupancy: Seller** will deliver possession and occupancy of the Property to **Buyer** at
160 closing. **Seller** will provide keys, remote controls, and any security/access codes necessary to operate all locks,
161 mailboxes, and security systems.

162 **(b) Costs: Buyer** will pay **Buyer's** attorneys' fees, taxes and recording fees on notes, mortgages and financing
163 statements and recording fees for the deed. **Seller** will pay **Seller's** attorneys' fees, taxes on the deed and
164 recording fees for documents needed to cure title defects. If **Seller** is obligated to discharge any encumbrance at or
165 prior to closing and fails to do so, **Buyer** may use purchase proceeds to satisfy the encumbrances.

166 **(c) Documents: Seller** will provide the deed; bill of sale; mechanic's lien affidavit; originals of those assignable
167 service and maintenance contracts that will be assumed by **Buyer** after the Closing Date and letters to each
168 service contractor from **Seller** advising each of them of the sale of the Property and, if applicable, the transfer of its
169 contract, and any assignable warranties or guarantees received or held by **Seller** from any manufacturer,
170 contractor, subcontractor, or material supplier in connection with the Property; current copies of the condominium
171 documents, if applicable; assignments of leases; updated rent roll; tenant and lender estoppels letters (if
172 applicable); tenant subordination, non-disturbance and attornment agreements (SNDAs) required by the **Buyer** or
173 **Buyer's** lender; assignments of permits and licenses; corrective instruments; and letters notifying tenants of the
174 change in ownership/rental agent. If any tenant refuses to execute an estoppels letter, **Seller**, if requested by the
175 **Buyer** in writing, will certify that information regarding the tenant's lease is correct. If **Seller** is an entity, **Seller** will
176 deliver a resolution of its governing authority authorizing the sale and delivery of the deed and certification by the
177 appropriate party certifying the resolution and setting forth facts showing the conveyance conforms to the
178 requirements of local law. **Seller** will transfer security deposits to **Buyer**. **Buyer** will provide the closing statement,
179 mortgages and notes, security agreements, and financing statements.

180 **(d) Taxes and Prorations:** Real estate taxes, personal property taxes on any tangible personal property, bond
181 payments assumed by **Buyer**, interest, rents (based on actual collected rents), association dues, insurance
182 premiums acceptable to **Buyer**, and operating expenses will be prorated through the day before closing. If the
183 amount of taxes for the current year cannot be ascertained, rates for the previous year will be used with due
184 allowance being made for improvements and exemptions. Any tax proration based on an estimate will, at request
185 of either party, be readjusted upon receipt of current year's tax bill; this provision will survive closing.

186 **(e) Special Assessment Liens:** Certified, confirmed, and ratified special assessment liens as of the Closing Date
187 will be paid by **Seller**. If a certified, confirmed, and ratified special assessment is payable in installments, **Seller** will
188 pay all installments due and payable on or before the Closing Date, with any installment for any period extending
189 beyond the Closing Date prorated, and **Buyer** will assume all installments that become due and payable after the
190 Closing Date. **Buyer** will be responsible for all assessments of any kind which become due and owing after Closing
191 Date, unless an improvement is substantially completed as of Closing Date. If an improvement is substantially
192 completed as of the Closing Date but has not resulted in a lien before closing, **Seller** will pay the amount of the last
193 estimate of the assessment. This subsection applies to special assessment liens imposed by a public body and
194 does not apply to condominium association special assessments.

195 **(f) Foreign Investment in Real Property Tax Act (FIRPTA):** If **Seller** is a "foreign person" as defined by FIRPTA,
196 **Seller** and **Buyer** agree to comply with Section 1445 of the Internal Revenue Code. **Seller** and **Buyer** will
197 complete, execute, and deliver as directed any instrument, affidavit, or statement reasonably necessary to comply

Buyer (_PQ_) (_____) and Seller (_ZoCB_) (_SVG_) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.

CC-5   Rev. 9/17                                                                          ©2017 Florida Realtors®

This software is licensed to [Vincent Ricaud - INVESTUS REALTY LLC] www.transactiondesk.com.   InstanetFORMS

Authentisign ID: 16FB5676-C3A4-432E-8B10-C6B32E96E1A3

198  with the FIRPTA requirements, including delivery of their respective federal taxpayer identification numbers or
199  Social Security Numbers to the closing agent. If **Buyer** does not pay sufficient cash at closing to meet the
200  withholding requirement, **Seller** will deliver to **Buyer** at closing the additional cash necessary to satisfy the
201  requirement.

202  **10. ESCROW AGENT: Seller** and **Buyer** authorize Escrow Agent or Closing Agent (collectively "Agent") to receive,
203  deposit, and hold funds and other property in escrow and, subject to collection, disburse them in accordance with the
204  terms of this Contract. The parties agree that Agent will not be liable to any person for misdelivery of escrowed items to
205  **Seller** or **Buyer**, unless the misdelivery is due to Agent's willful breach of this Contract or gross negligence. If Agent
206  has doubt as to Agent's duties or obligations under this Contract, Agent may, at Agent's option, (a) hold the escrowed
207  items until the parties mutually agree to its disbursement or until a court of competent jurisdiction or arbitrator
208  determines the rights of the parties or (b) deposit the escrowed items with the clerk of the court having jurisdiction over
209  the matter and file an action in interpleader. Upon notifying the parties of such action, Agent will be released from all
210  liability except for the duty to account for items previously delivered out of escrow. If Agent is a licensed real estate
211  broker, Agent will comply with Chapter 475, Florida Statutes. In any suit in which Agent interpleads the escrowed items
212  or is made a party because of acting as Agent hereunder, Agent will recover reasonable attorney's fees and costs
213  incurred, with these amounts to be paid from and out of the escrowed items and charged and awarded as court costs
214  in favor of the prevailing party.

215  **11. CURE PERIOD:** Prior to any claim for default being made, a party will have an opportunity to cure any alleged
216  default. If a party fails to comply with any provision of this Contract, the other party will deliver written notice to the non-
217  complying party specifying the non-compliance. The non-complying party will have _____ days (5 days if left blank) after
218  delivery of such notice to cure the non-compliance. Notice and cure shall not apply to failure to close.

219  **12. FORCE MAJEURE: Buyer** or **Seller** shall not be required to perform any obligation under this Contract or be liable
220  to each other for damages so long as performance or non-performance of the obligation, or the availability of services,
221  insurance, or required approvals essential to Closing, is disrupted, delayed, caused or prevented by Force Majeure.
222  "Force Majeure" means: hurricanes, floods, extreme weather, earthquakes, fire, or other acts of God, unusual
223  transportation delays, or wars, insurrections, or acts of terrorism, which, by exercise of reasonable diligent effort, the
224  non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will
225  be extended a reasonable time up to 7 days after the Force Majeure no longer prevents performance under this
226  Contract, provided, however, if such Force Majeure continues to prevent performance under this Contract more than
227  30 days beyond Closing Date, then either party may terminate this Contract by delivering written notice to the other
228  and the Deposit shall be refunded to **Buyer**, thereby releasing **Buyer** and **Seller** from all further obligations under this Contract.

229  **13. RETURN OF DEPOSIT:** Unless otherwise specified in the Contract, in the event any condition of this Contract is
230  not met and **Buyer** has timely given any required notice regarding the condition having not been met, **Buyer's** deposit
231  will be returned in accordance with applicable Florida Laws and regulations.

232  **14. DEFAULT:**
233  **(a)** In the event the sale is not closed due to any default or failure on the part of **Seller** other than failure to make
234  the title marketable after diligent effort, **Buyer** may elect to receive return of Buyer's deposit without thereby
235  waiving any action for damages resulting from Seller's breach and may seek to recover such damages or seek
236  specific performance. If Buyer elects a deposit refund, Seller may be liable to Broker for the full amount of the
237  brokerage fee.
238  **(b)** In the event the sale is not closed due to any default or failure on the part of **Buyer**, **Seller** may either (1)
239  retain all deposit(s) paid or agreed to be paid by **Buyer** as agreed upon liquidated damages, consideration for the
240  execution of this Contract, and in full settlement of any claims, upon which this Contract will terminate or (2) seek
241  specific performance. If **Buyer** fails to timely place a deposit as required by this Contract, **Seller** may either (1)
242  terminate the Contract and seek the remedy outlined in this subparagraph or (2) proceed with the Contract without
243  waiving any remedy for **Buyer's** default.

244  **15. ATTORNEY'S FEES AND COSTS:** In any claim or controversy arising out of or relating to this Contract, the
245  prevailing party, which for purposes of this provision will include **Buyer**, **Seller** and **Broker**, will be awarded reasonable
246  attorneys' fees, costs, and expenses.

247  **16. NOTICES:** All notices will be in writing and may be delivered by mail, overnight courier, personal delivery, or
248  electronic means. Parties agree to send all notices to addresses specified on the signature page(s). Any notice,
249  document, or item given by or delivered to an attorney or real estate licensee (including a transaction broker)
250  representing a party will be as effective as if given by or delivered to that party.

Buyer (__[PI]__) (_____) and Seller __[ZeR]__ (__[SVG]__) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.

This software is licensed to [Vincent Ricaud - INVESTUS REALTY LLC] www.transactiondesk.com.   Instanet FORMS

## 17. DISCLOSURES:

**(a) Commercial Real Estate Sales Commission Lien Act:** The Florida Commercial Real Estate Sales Commission Lien Act provides that a broker has a lien upon the owner's net proceeds from the sale of commercial real estate for any commission earned by the broker under a brokerage agreement. The lien upon the owner's net proceeds is a lien upon personal property which attaches to the owner's net proceeds and does not attach to any interest in real property. This lien right cannot be waived before the commission is earned.

**(b) Special Assessment Liens Imposed by Public Body:** The Property may be subject to unpaid special assessment lien(s) imposed by a public body. (A public body includes a Community Development District.) Such liens, if any, will be paid as set forth in Paragraph 9(e).

**(c) Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

**(d) Energy-Efficiency Rating Information:** Buyer acknowledges receipt of the information brochure required by Section 553.996, Florida Statutes.

## 18. RISK OF LOSS:

**(a)** If, after the Effective Date and before closing, the Property is damaged by fire or other casualty, **Seller** will bear the risk of loss and **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing the Property at the agreed upon purchase price and **Seller** will credit the deductible, if any and transfer to **Buyer** at closing any insurance proceeds, or **Seller's** claim to any insurance proceeds payable for the damage. **Seller** will cooperate with and assist **Buyer** in collecting any such proceeds. **Seller** shall not settle any insurance claim for damage caused by casualty without the consent of the **Buyer**.

**(b)** If, after the Effective Date and before closing, any part of the Property is taken in condemnation or under the right of eminent domain, or proceedings for such taking will be pending or threatened, **Buyer** may cancel this Contract without liability and the deposit(s) will be returned to **Buyer**. Alternatively, **Buyer** will have the option of purchasing what is left of the Property at the agreed upon purchase price and **Seller** will transfer to the **Buyer** at closing the proceeds of any award, or **Seller's** claim to any award payable for the taking. **Seller** will cooperate with and assist **Buyer** in collecting any such award.

**19. ASSIGNABILITY; PERSONS BOUND:** This Contract may be assigned to a related entity, and otherwise ☐ is not assignable ☐ is assignable. If this Contract may be assigned, **Buyer** shall deliver a copy of the assignment agreement to the **Seller** at least 5 days prior to Closing. The terms **"Buyer," "Seller"** and "Broker" may be singular or plural. This Contract is binding upon **Buyer, Seller** and their heirs, personal representatives, successors and assigns (if assignment is permitted).

**20. MISCELLANEOUS:** The terms of this Contract constitute the entire agreement between **Buyer** and **Seller**. Modifications of this Contract will not be binding unless in writing, signed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. This Contract will be construed under Florida law and will not be recorded in any public records.

**21. BROKERS:** Neither **Seller** nor **Buyer** has used the services of, or for any other reason owes compensation to, a licensed real estate Broker other than:

**(a) Seller's Broker:** _____darling realty_____    _____Lance A. Bieker_____,
                                    (Company Name)                      (Licensee)

_2044 47th St Sarasota FL 34234   941-357-3112 lbieker@ccim.net_____,
                            (Address, Telephone, Fax, E-mail)

who ☒ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated_ by ☒ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ a listing agreement ☐ other (specify) _3% of purchase price_

**(b) Buyer's Broker:** _____INVESTUS REALTY LLC_____    ____Vincent Ricaud____
                                    (Company Name)                      (Licensee)

_1244 Ranchero Dr. Sarasota FL 34240   941-538-2010   vincent.ricaud@icloud.com_
                            (Address, Telephone, Fax, E-mail)

Buyer (___PY___) (_____) and Seller (_IorB_) (_SVG_) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

CC-5   Rev. 9/17                                                  ©2017 Florida Realtors®

Authentisign ID: 16F1B57A5C33A4A2E9E1FC130E61AB2A

302  who ☐ is a single agent ☐ is a transaction broker ☐ has no brokerage relationship and who will be compensated by
303  ☒ **Seller's Broker** ☐ **Seller** ☐ **Buyer** ☐ both parties pursuant to ☐ an MLS offer of compensation ☒ other (specify)
304  <u>3% of purchase price</u>
305  (collectively referred to as "Broker") in connection with any act relating to the Property, including but not limited to
306  inquiries, introductions, consultations, and negotiations resulting in this transaction. **Seller** and **Buyer** agree to
307  indemnify and hold Broker harmless from and against losses, damages, costs and expenses of any kind, including
308  reasonable attorneys' fees at all levels, and from liability to any person, arising from (1) compensation claimed which is
309  inconsistent with the representation in this Paragraph, (2) enforcement action to collect a brokerage fee pursuant to
310  Paragraph 10, (3) any duty accepted by Broker at the request of **Seller** or **Buyer**, which is beyond the scope of
311  services regulated by Chapter 475, Florida Statutes, as amended, or (4) recommendations of or services provided and
312  expenses incurred by any third party whom Broker refers, recommends, or retains for or on behalf of **Seller** or **Buyer**.

313  **22. OPTIONAL CLAUSES:** (Check if any of the following clauses are applicable and are attached as an addendum to
314  this Contract):
315  ☐ Arbitration                          ☐ Seller Warranty                       ☐ Existing Mortgage
316  ☐ Section 1031 Exchange                 ☐ Coastal Construction Control Line     ☐ Buyer's Attorney Approval
317  ☐ Property Inspection and Repair        ☐ Flood Area Hazard Zone                ☐ Seller's Attorney Approval
318  ☐ Seller Representations                ☐ Seller Financing                      ☐ Other _____

319  **23. ADDITIONAL TERMS:**
320  **The closing is contingent on existing tenants entering into new lease**
321  **agreements acceptable to buyer at terms outlined in attached term sheet.**

322  **This contract is contingent on bankruptcy court approval**
323
324
325
326
327
328
329
330
331
332
333
334
335
336
337
338
339
340
341

342  **THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF NOT FULLY UNDERSTOOD, SEEK THE**
343  **ADVICE OF AN ATTORNEY PRIOR TO SIGNING. BROKER ADVISES BUYER AND SELLER TO VERIFY ALL**
344  **FACTS AND REPRESENTATIONS THAT ARE IMPORTANT TO THEM AND TO CONSULT AN APPROPRIATE**
345  **PROFESSIONAL FOR LEGAL ADVICE (FOR EXAMPLE, INTERPRETING CONTRACTS, DETERMINING THE**
346  **EFFECT OF LAWS ON THE PROPERTY AND TRANSACTION, STATUS OF TITLE, FOREIGN INVESTOR**
347  **REPORTING REQUIREMENTS, ETC.) AND FOR TAX, PROPERTY CONDITION, ENVIRONMENTAL AND OTHER**

**Buyer** (____) (____) and **Seller** (____) (____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.

CC-5    Rev. 9/17                                                                    ©2017 Florida Realtors®

Authentisign ID: 16F85675-C5B4-443E-8B46-C1543C6252C8

348  **ADVICE. BUYER ACKNOWLEDGES THAT BROKER DOES NOT OCCUPY THE PROPERTY AND THAT ALL**
349  **REPRESENTATIONS (ORAL, WRITTEN OR OTHERWISE) BY BROKER ARE BASED ON SELLER**
350  **REPRESENTATIONS OR PUBLIC RECORDS UNLESS BROKER INDICATES PERSONAL VERIFICATION OF**
351  **THE REPRESENTATION. BUYER AGREES TO RELY SOLELY ON SELLER, PROFESSIONAL INSPECTORS AND**
352  **GOVERNMENTAL AGENCIES FOR VERIFICATION OF THE PROPERTY CONDITION, SQUARE FOOTAGE AND**
353  **FACTS THAT MATERIALLY AFFECT PROPERTY VALUE.**

354  Each person signing this Contract on behalf of a party that is a business entity represents and warrants to the other
355  party that such signatory has full power and authority to enter into and perform this Contract in accordance with its
356  terms and each person executing this Contract and other documents on behalf of such party has been duly authorized
357  to do so.

358  (Signature of Buyer)                                    Date: ___06/06/2019___

359  Pinki Jandu and/or assigns                              Tax ID No.: _____
     (Typed or Printed Name of Buyer)

360  Title: _____                                     Telephone: _____

361  _____                                            Date: _____
     (Signature of Buyer)

362  _____                                            Tax ID No.: _____
     (Typed or Printed Name of Buyer)

363  Title: _____                                     Telephone: _____

364  Buyer's Address for purpose of notice _____

365  Facsimile: _____                                 Email:   pinki.jandu@century21.ca

366  _Lance A Bieker_                                        Date: ___06/07/2019___
     (Signature of Seller)

367  Lance A Bieker                                          Tax ID No.: _____
     (Typed or Printed Name of Seller)

368  Title: _____                                     Telephone: _____

369  _Stacy V. George_                                       Date: ___06/07/2019___
     (Signature of Seller)

370  Stacy V. George                                         Tax ID No.: _____
     (Typed or Printed Name of Seller)

371  Title: _____                                     Telephone: _____

372  Seller's Address for purpose of notice: _____

373  Facsimile: _____                                 Email: _____

The Florida Association of REALTORS® makes no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS® and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or

**Buyer** (_PJ_) (____) **and Seller** (_LAB_) (_SVG_) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

CC-5    Rev. 9/17                                           ©2017 Florida Realtors®

Authentisign ID: ABFB575C784-4305-8B15-C8C612C995EF

## 5135, 5139 & 5239 Manatee Avenue West

## Income Investments within The Fairway Center Condominium

The Fairway Center is a local neighborhood center with six figure reserves and a respectably maintained site and building. It is well under the national average for per square foot cost of maintenance, currently assessed at $2.90 per square foot. It includes: site maintenance, site insurance, building windstorm and fire insurance, roof and building exterior maintenance (excepting doors and window storefronts which are owner responsibility [tenant care as per leases], water, trash, sewer, painting, termiting and asphalt.

5135 Manatee Avenue West, Unit 9A  650 sf}
5139 Manatee Avenue West, Unit 9B 801 sf }   Currently combined for 1451 SF Eckerd's Pharmacy, tenant

5239 Manatee Avenue West, Unit 2 2954 sf} current Home Instead Heath Care, tenant

Lease details:

Eckerd's Pharmacy new 5 year Lease (written in investor's entity name) no options
    Year 1 $2215.00+ state sales tax
    Year 2 $22.77.50 + state sales tax
    Year 3 $2340.00 + state sales tax
    Year 4 $2402.50 + state sales tax
    Year 5 $2465.00 + state sales tax

features:  actually two parcel units for flexibility in sale and or occupancy, brand new HVAC systems to be installed prior to close with conveying warranties in investor entity name, tenant takes care of HVAC, great unit size and shape, excellent signage, third term, occupancy since 2012, under current market rent rates, & a personal guaranty!

Home Instead Health Care, new (balance of 7 year Lease as of September 2018, written in investor's entity name) no options
    09/18-08/19 $4128.38 + state sales tax
    09/19-08/20 $4228.38 + state sales tax
    09/20-08/21 $4338.38 + state sales tax
    09/21-08/22 $4438.38 + state sales tax
    09/22-08/23 $4538.38 + state sales tax
    09/23-08/24 $4638.38 + state sales tax
    09/24-08/25 $4738.38 + state sales tax

features:  best visibility and frontage within The Fairway Center (60' linear feet), best pylon signage on the main sign, modern build out, HVAC systems young and maintained by tenant, second term, tenant since early 2015, under current rent rates, & a personal guaranty

5135 Real Estate Tax $1355.72
5139 Real Estate Tax $1584.09
5239 Real Estate Tax $5081.30

5135 2018 Condo Fee/Month $159.17
5139 2018 Condo Fee/Month $197.89
5239 2018 Condo Fee/Month $725.95


